FILED
2016 Aug-04  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **BIRMINGHAM PLUMBERS AND STEAMFITTERS LOCAL 91 PENSION PLAN; BIRMINGHAM PLUMBERS AND STEAMFITTERS LOCAL 91 WELFARE FUND;** | } } } } } } | **Case No.: 2:15-cv-00499-MHH** |
| **Plaintiffs,** | } } } | |
| **v.** | } } | |
| **IRON MOUNTAIN CONSTRUCTION, INC.,** | | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on plaintiffs Birmingham Plumbers and Steamfitters Local 91 Pension Plan and Birmingham Plumbers and Steamfitters Local 91 Health and Welfare Fund's motion for a default judgment against defendant Iron Mountain Construction, Inc. (Doc. 16). The Clerk entered default against Iron Mountain after Iron Mountain, having been served, failed to respond to the plaintiffs' complaint. (Doc. 15). The plaintiffs have provided a detailed account of the basis for their claim. For the reasons discussed below, the Court grants the plaintiffs' motion for default judgment.

## I.   STANDARD OF REVIEW

1

Federal Rule of Civil Procedure 55 establishes a two-step procedure for obtaining a default judgment.  First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, if the defendant is not an infant or an incompetent person, the district court may enter a default judgment against the defendant because of the defendant's failure to appear or defend.  Fed. R. Civ. P. 55(b)(2).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

"A motion for default judgment is not granted as a matter of right."  *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).  After the clerk enters default pursuant to Rule 55(a), the Court must review the sufficiency of the complaint and its underlying substantive merits to determine whether the moving party is entitled to default judgment.  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997).  The Court must ensure that the well-pleaded allegations in the complaint state a substantive cause of action and that a sufficient basis exists in the pleadings for the relief sought.  *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005).  In addition to the pleadings, the Court may consider evidence presented in the form of an affidavit or declaration.  *Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011).

2

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted)).   When assessing damages, however, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007).  Determining the amount of damages may require an evidentiary hearing; but if the record is sufficient, the Court may determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).  In other words, although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs are multi-employer benefit plans under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(3), (37) (as amended).  (Doc. 1, pp. 1-2).  The Plans were established and are maintained according to an agreement and a declaration of trust.  (Docs. 16-3, 16-4). Contributions to the Funds are made pursuant to a collective bargaining agreement between the Plumbers and Steamfitters Local 91 and participating employers.

(Doc. 1, ¶ 2; Doc. 16-4, p. 1).  A board of trustees administers the Plans.  (Doc. 1, ¶ 2).   Iron Mountain is a participating employer and a party to the collective bargaining agreement, and it is obligated to make contributions to the Fund pursuant to a written agreement.  (Doc. 1, ¶ 3; Doc. 16-2).

At all relevant times, Iron Mountain employed employees covered by the collective bargaining agreement and was bound under the agreement and declaration of trust to make contributions to the Funds on behalf of covered employees.  (Doc. 1, ¶ 4; Doc. 16-4).  "Pursuant to the provisions of the respective Plans and Collective Bargaining Agreements, [Iron Mountain] agreed to pay to Plaintiff Plans certain sums of money for each hour worked by employees covered by the collective bargaining agreement."   (Doc. 1, ¶ 5).  Furthermore, Iron Mountain "agreed to be bound by the Agreement and Declaration of Trust establishing the Plaintiff Funds and agreed to make contributions on behalf of covered employees in conformity with the Agreement and Declaration of Trust establishing the Plaintiff Funds."  (Doc. 1, ¶ 7).

The plaintiffs allege in their complaint that Iron Mountain failed to pay contributions, subsequently accrued interest, and liquidated damages to the Funds for the months of October 2013; October, November, and December, 2014; and January 2015.   (Doc. 1, ¶ 9).   The plaintiffs have since explained that Iron Mountain has paid the amounts due for October, November and December 2014,

4

and January 2015.  (Doc. 16-1, ¶ 4).  Therefore, the plaintiffs seek only the missed payment from October 2013 and the interest and damages associated with that payment.  (Doc. 1, p. 3; Doc. 16-1, 2).  Pursuant to the agreement and declaration of trust establishing the Plans, the plaintiffs also allege that they are entitled to reasonable attorneys' fees and court costs.  (Doc. 1, ¶ 10; Doc. 16-3, pp. 27-28).  The plaintiffs seek to enforce Iron Mountain's contractual obligation to make contributions to the multi-employer employee benefit plans under the terms of the pension plans and the collectively bargained labor contract.  (Doc. 1, ¶ 1).

The plaintiffs properly served Iron Mountain on September 11, 2015.  (Doc. 13).  The plaintiffs moved for entry of default on October 15, 2015 (Doc. 14), and the Clerk entered default against Iron Mountain on the same day (Doc. 15).[1]  Iron Mountain neither responded to the complaint, nor contested the plaintiffs' motion for entry of default.  On October 16, 2015, the plaintiffs filed a motion for default judgment against Iron Mountain.  (Doc. 16).

## III.   DISCUSSION

### a. Subject Matter Jurisdiction

---

[1] The plaintiffs first moved for entry of default on June 23, 2015 (Doc. 6), and the Clerk entered default against Iron Mountain on the same day (Doc. 8).  The Clerk then reassigned this case from Magistrate Judge John England to the undersigned (Doc. 9), after which the plaintiffs served Iron Mountain for the second time (Doc. 12).  The plaintiffs filed a second motion for entry of default on October 15, 2015 (Doc. 14), and the Clerk entered default against Iron Mountain on the same day (Doc. 15).

The Court first assesses whether it has subject matter jurisdiction over this action.  Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a plan or under the terms of a collectively bargained agreement . . . [must] make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  Additionally, section 502 of ERISA provides that the liability created in section 515 is enforceable by bringing an action in federal court.  *See* 29 U.S.C. § 1132(d)(1).  Furthermore, the Labor Management Relations Act states that in ERISA cases, "suits for violation of contracts between an employer and labor organizer . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  The plaintiffs allege that Iron Mountain violated ERISA by failing to fulfill the statutory obligation to pay contributions to the Health and Welfare Fund as specified in the Pension Plan.  (Doc. 1, ¶ 10).  Because a federal question is presented on the face of the plaintiffs' complaint, this Court has federal subject matter jurisdiction.  *See, e.g.*, *Kemp v. Int'l Bus. Machines Corp.*, 109 F.3d 708, 712 (11th Cir. 1997).

**b.  Personal Jurisdiction**

The Court also must assess whether it has personal jurisdiction over Iron Mountain.  *See Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999); *see also Sys.*

*Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.") (alteration in original).

Under the due process clause, "a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)) (internal quotations omitted). "The Due Process Clause, by ensuring the 'orderly administration of the laws,' gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (quoting *International Shoe*, 326 U.S. at 319).

There are two categories of personal jurisdiction:  general jurisdiction and specific jurisdiction. *Daimler*, 134 S. Ct. at 754.  General jurisdiction "refers to the power of a court in the forum to adjudicate any cause of action involving a particular defendant, irrespective of where the cause of action arose" because the defendant is "at home" in the forum. *Daimler*, 134 S. Ct. at 752.  The Supreme

Court has held that a corporate defendant typically is at home in either its state of incorporation or its principal place of business. *Id.* at 760-62. Records on file with the Alabama Secretary of State indicate that Iron Mountain exists as a domestic corporation with its "principal address" in Trussville, Alabama and its "place of formation" in Jefferson County, Alabama.[2] Considering this information, the Court finds that Iron Mountain is at home in Alabama and, thus, that the Court has general jurisdiction over Iron Mountain.

### c. Statutory Violations and Damages

#### i. Liability

Section 515 of ERISA requires that "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. The plaintiffs have attached to their motion a letter of assent, Agreements and Declarations of Trust, and an affidavit, each of which establishes the existence of a multi-employer benefit plan and Iron Mountain's specific payment obligations pursuant to ERISA and the Plan

---

[2] For the Alabama Secretary of State's records on Iron Mountain, see "Business Entity Details," at http://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=201348&page=name&file=&type=ALL&status=ALL&place=ALL&city= (last visited July 12, 2016). Federal Rule of Evidence 201 provides that a court may take judicial notice of a fact that is not subject to reasonable dispute if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The information found on the website of the Alabama Secretary of State falls within the purview of Rule 201(b)(2).

8

and Trust documents.  (*See* Docs. 16-1, 16-2, 16-3, 16-4).  Because the plaintiffs have established the existence of an agreement under which Iron Mountain agreed to make contributions to the plaintiffs, Iron Mountain is liable pursuant section 515.

### ii.   Damages

When enforcing section 515 of ERISA, the Court shall award the plaintiffs:

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—

> (i) interest on the unpaid contributions, or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

The plaintiffs seek contributions due to the Fund for October 2013, interest accrued from the due date of that payment, liquidated damages, costs, and attorneys' fees.   Marilyn Eaves, an employee of the plaintiffs whose "responsibilities include the duty to maintain records of contributions and amounts

9

due from employers to the Pension Plan and Health and Welfare Fund," stated in a

declaration:

> 3.     The Plan and Trust documents which compels [sic] the
> contributions, as well as applicable law, provide that in the event that
> contributions are not paid, interest is due at the rate of 12 percent *per
> annum* on the contributions from the due date of contributions[,] that
> liquidated damages of 20 percent are due and payable on the
> contribution amounts, and that the Funds are entitled to a reasonable
> attorney's fee for its collection efforts. . . .

> 4.     [Iron Mountain] has submitted reports detailing hours worked
> but without payment for October 2013.  [Iron Mountain] has paid the
> contributions due for October, November and December 2014 and
> January 2015.  Based upon these documents in the Plans' possession
> the following amounts are due to the Funds for contributions, interest,
> and liquidated damages through September, 2015:

| Month | H&W Contribution | PENSION Contribution | Interest Due | Liquidated Damages Due | Total |
|-------|------------------|----------------------|--------------|------------------------|-------|
| October 2013 | $55,244.85 | $21,381.38 | $17,144.10 | $15,325.25 | $109,095.58 |
| **TOTAL** | $55,244.85 | $21,381.38 | $17,144.10 | $15,325.25 | $109,095.58 |

(Doc. 16-1, ¶¶ 2-4).

Because the plaintiffs seek only those damages provided expressly under

sections 502 and 515 of ERISA, based on the evidence in the record, the Court is

satisfied that there is a legitimate basis for a damages award with respect to the

October 2013 payment.  *See Anheuser Busch*, 317 F.3d at 1266.  The record is

sufficient.  Therefore, the Court will not set a hearing on damages.  *See Smyth*, 420

F.3d at 1232 n.13.

## IV.     Conclusion

For the reasons discussed above, the Court GRANTS the plaintiffs' motion for default judgment.   On or before August 19, 2016, the plaintiffs shall file a notice stating the amount of interest on the unpaid October 2013 contributions that has accrued since September 2015.   Upon reviewing this notice, the Court will enter a final judgment.   The Court asks the Clerk to please term Doc. 16.

**DONE** and **ORDERED** this August 4, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE